Strafford
No. 87-152

### THE STATE OF NEW HAMPSHIRE

v.

### PETER CARROLL

December 9, 1988

*Stephen E. Merrill*, attorney general (*John S. Davis*, assistant attorney general, on the brief and orally), for the State.

*Shaheen, Cappiello, Stein & Gordon P.A.*, of Dover (*Judith E. Hotham* and *Daniel M. Cappiello* on the brief, and *Mr. Cappiello* orally), for the defendant.

THAYER, J.   The defendant, Peter Carroll, was charged with possession of cocaine with intent to distribute in violation of RSA 318-B:26. The State appeals from an order of the Superior Court (*Temple*, J.) granting the defendant's motion to suppress evidence seized pursuant to a search warrant issued by a justice of the Dover District Court (*Moher*, J.). We reverse and remand.

On December 10, 1985, Detective Thomas Stinglen of the Dover Police Department applied for a warrant to search the premises at 860 Central Avenue, Dover, for cocaine, instrumentalities used in the weighing and packaging of cocaine, records representing the sale of drugs, and any monies which may be the proceeds of drug sales. In support of this application, Detective Stinglen executed a detailed affidavit which stated the following facts.

On December 9, 1985, Detective Stinglen received information from a confidential informant that Peter Carroll, of 860 Central Avenue, was a supplier of cocaine. In addition, the informant stated that he would be able to purchase cocaine from Carroll. Detective Stinglen then instructed the informant to make arrangements with Carroll for the purchase of cocaine. Later that day, Detective Stinglen received a call from the informant, who told him that Carroll would be receiving an unknown quantity of cocaine on that day, that Carroll had agreed to sell a certain quantity of cocaine to the informant, and that Carroll would call the informant to advise him when the cocaine became available.

Upon receipt of this information, Detective Stinglen, together with Detective Brian Miller, began surveillance of the premises at 860 Central Avenue. Detectives Stinglen and Miller observed several vehicles parked in the driveway of the residence. Two of these vehicles subsequently left the driveway and proceeded north on Central Avenue after something had been placed in the trunk of one of the vehicles. A check of the registration of these vehicles revealed that neither vehicle was registered to Peter Carroll.

Thirty-nine minutes later, Detective Stinglen received another call from the informant in which the informant reported that he had just received a call from Carroll, who had stated that he would be getting the "white" shortly, and that Carroll would call the informant when the "white" became available. Detective Stinglen understood "white" to be a common street term for cocaine. Fifteen minutes later, Detectives Stinglen and Miller observed a car arrive at 860 Central Avenue, the car appearing to be the other car which had previously been parked in the driveway. The operator exited the vehicle and carried a large brown paper bag into the residence at 860 Central Avenue.

Six minutes later, Detective Stinglen received a call from the informant stating that Carroll had contacted him and advised him that the cocaine was available. Nine minutes later, Detective Stinglen met with the informant and conducted a search of his person. Detective Stinglen placed all of the informant's personal belongings in a bag, which Stinglen retained, and provided the informant with money to make the drug purchase. Detective Stinglen then drove the informant to the area of 860 Central Avenue and personally observed him walk, without diversion, directly into the residence at 860 Central Avenue. During the time the informant was in the house, no one entered or exited the residence. The informant emerged from the residence seven minutes later and returned to the area where Detective Stinglen was located.

The informant handed Detective Stinglen the remainder of the money which had not been used for the purchase, along with a plastic bag containing a white powdery substance which Detective Stinglen determined to be consistent with cocaine. The informant stated that he had received the substance from Peter Carroll. Detective Stinglen then searched the informant to ensure that there was no additional contraband on the informant's person and returned his personal belongings to him.

In addition to this information, the affidavit also alleged that Detective Stinglen had received information from Detective Supervisor William Fenniman of the Dover Police Department. Detective Fenniman told Detective Stinglen that on November 20, 1985, another confidential informant had informed Detective Fenniman that Peter Carroll was selling cocaine in ounce quantities. Detective Fenniman's informant also stated that Peter Carroll lived in a house located just south of the BP station on the "miracle mile," Central Avenue in Dover. Detective Stinglen averred that this house was 860 Central Avenue. Detective Fenniman's informant

was known to have given information in the past which had resulted in over twenty indictments.

Upon receipt of the application and supporting affidavit alleging the facts set forth above, and after consideration of said materials, Special Justice Moher of the Dover District Court found that probable cause existed to believe that cocaine would be found at 860 Central Avenue. Justice Moher then issued the search warrant. The search of 860 Central Avenue produced evidence which led to the defendant's indictment for possession of cocaine with the intent to distribute.

The defendant moved to suppress the evidence seized pursuant to the warrant on the basis that the warrant was invalid because the supporting affidavit was insufficient to support a finding of probable cause and, therefore, that the search violated his rights under part I, article 19 of the New Hampshire Constitution and under the fourth amendment to the United States Constitution, made applicable to the States through the fourteenth amendment. The defendant alleged in his motion that the confidential informant was not a reliable source, and since the affidavit lacked information from which to ascertain the informant's reliability, it could not support a finding of probable cause. In addition, the defendant alleged that the warrant contained material misrepresentations which were recklessly or intentionally made. In support of this contention, the defendant produced affidavits from two friends stating that he was not at 860 Central Avenue on the evening of December 9, 1985, between the hours of 6:30 p.m. and midnight, when the alleged sale had taken place.

The Superior Court (*Temple*, J.) granted the defendant's motion to suppress. The court held that Detective Stinglen's affidavit failed to establish that the informant was reliable or that the informant had a basis of knowledge for his statements concerning the defendant's activities. In addition, the trial court found that in light of the defendant's production of affidavits which "strongly suggest[ed]" that the police affidavit consisted largely of misrepresentations, and the State's failure to seek corroboration of the informant's statements, the State failed to meet its burden of demonstrating that the misrepresentations were neither intentional nor reckless.

The State raises two issues in this appeal: whether the trial court erred in finding Detective Stinglen's affidavit facially insufficient to establish probable cause to issue a search warrant; and whether the court erred in finding that the affidavit contained material misrepresentations which were intentionally or recklessly made.

The State argues that the search warrant is valid under the current fourth amendment probable cause standard, the "totality-of-the-circumstances" test articulated in *Illinois v. Gates*, 462 U.S. 213 (1983). The State further urges this court to adopt the similar test proposed by Chief Justice Brock in *State v. Bradberry*, 129 N.H. 68, 522 A.2d 1380 (1986) as the appropriate standard under part I, article 19 of the New Hampshire Constitution by which to evaluate the validity of search warrants based upon information from confidential informants. The defendant, on the other hand, urges this court to adopt the four-part test of *State v. Mandravelis*, 114 N.H. 634, 325 A.2d 794 (1974) as the appropriate State constitutional standard.

When analyzing the constitutionality of the search warrant before us, we will first address the State constitutional issues independently of federal constitutional considerations. *See State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983); *cf. State v. Doe*, 115 N.H. 682, 685, 371 A.2d 167, 169 (1975). In our analysis of the provisions of the New Hampshire Constitution, we make reference to decisions of the United States Supreme Court and other jurisdictions only for the purpose of aiding our State constitutional analysis. *See Michigan v. Long*, 463 U.S. 1032, 1041 (1983). Federal constitutional issues will then be addressed only to the extent that the United States Constitution provides greater protection than the New Hampshire Constitution. *State v. Ball, supra* at 232, 471 A.2d at 351. In this case, we must first address the issue of the proper standard to be applied in determining whether probable cause exists under our State Constitution.

■ Part I, article 19 of the New Hampshire Constitution provides that search warrants shall issue only upon "cause or foundation," supported by oath or affirmation. We have long interpreted this provision to require that warrants be issued only upon a determination of probable cause. *State v. Fields*, 119 N.H. 249, 252, 400 A.2d 1175, 1177 (1979); *see also State v. Spero*, 117 N.H. 199, 204, 371 A.2d 1155, 1158 (1977).

■■ Probable cause to search exists where a "[person] of ordinary caution would be justified in believing that what is sought will be found in the place to be searched . . . and that what is sought, if not contraband or fruits or implements of a crime, will 'aid in a particular apprehension or conviction.'" *State v. Jaroma*, 128 N.H. 423, 428, 514 A.2d 1274, 1277 (1986) (quoting *State v. Marcotte*, 123 N.H. 245, 248, 459 A.2d 278, 279–80 (1983) (citation omitted)). The police must demonstrate in an application for a

search warrant that there is a substantial likelihood that the items sought will be found in the place to be searched. However, "they need not establish with certainty, or even beyond a reasonable doubt, that the search will lead to the desired result." *Id.*

In *State v. Mandravelis*, 114 N.H. 634, 325 A.2d 794, this court stated the basic requirements for a search warrant where all or part of the information comes from an informant: the applicant should (1) state what information comes from the informant; (2) state the facts received from the informant and not merely his or her conclusions; (3) indicate how the informant obtained the information, *i.e.*, by personal knowledge or otherwise; and (4) state facts from which the magistrate can assess the credibility of the informant. In applying this test to the affidavit in question, the court held that independent police corroboration of the information received from the informant may satisfy missing *Mandravelis* requirements. *See id.* at 637–38, 325 A.2d at 796. *Mandravelis*, however, was not decided under part I, article 19 of the New Hampshire Constitution. Rather, "its reasoning was based upon the prevailing federal constitutional analysis in effect at the time it was decided." *State v. Bradberry*, 129 N.H. at 72, 522 A.2d at 1382.

At the time *Mandravelis* was decided, the federal approach to assessing the validity of a search warrant issued on the basis of information from an informant was the "two-pronged test" derived from the United States Supreme Court's decisions in *Aguilar v. Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 410 (1969). The first prong of this test, often referred to as the "basis of knowledge" prong, required that the magistrate be informed of some of the underlying circumstances from which the informant concluded that contraband could be found at the location in question. *Aguilar, supra* at 114. The second prong, often referred to as the "veracity" prong, required that the affidavit set forth some of the underlying facts from which the officer had concluded that the informant was credible or the information reliable. *See Aguilar supra* (citation omitted). The purpose of these requirements was to enable the magistrate to make an independent determination of probable cause. *State v. Gilson*, 116 N.H. 230, 232, 356 A.2d 689, 691 (1976). In *Spinelli*, the United States Supreme Court further stated that an informant's tip which, standing alone, would fail these requirements may support a finding of probable cause if independently corroborated to such a degree that it acquires the same level of trustworthiness as one which satisfies the *Aguilar* test. *Spinelli, supra* at 415. *Mandravelis* was essentially this court's application of the federal *Aguilar-Spinelli* standard.

The United States Supreme Court, in *Illinois v. Gates*, abandoned the rigidity of the two-pronged test in favor of the more flexible totality-of-the-circumstances test. *Gates*, 462 U.S. at 238. This test requires the issuing magistrate to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* The Court reasoned that this more flexible standard would better achieve the accommodation of public and private interests required by the fourth amendment. *Id.* at 239. Immediately following the *Gates* decision, this court in *State v. Sands*, 123 N.H. 570, 467 A.2d 202 (1983) cited *Gates* as well as *Mandravelis* in holding that "[h]earsay may establish probable cause for the issuance of a search warrant if, given the totality of the circumstances, including the informant's veracity and reliability and the basis of his information, there is a fair probability that the evidence will be found in a particular place." *Sands, supra* at 603–04, 467 A.2d at 223. The court in *Sands*, however, did not adopt this totality-of-the-circumstances test as the State constitutional standard.

In *State v. Bradberry*, 129 N.H. 68, 522 A.2d 1380, Chief Justice Brock expressed his personal preference for adopting a "totality-of-the-circumstances" test as the appropriate approach under the State Constitution, in determining whether probable cause exists for the issuance of a search warrant based upon information provided by an informant. *Id.* at 73, 522 A.2d at 1382. Chief Justice Brock noted, however, that the *Mandravelis* requirements would remain as factors to be considered by the magistrate in making such a decision. *Id.*, 522 A.2d at 1382–83. The chief justice's opinion in *Bradberry*, however, was not joined in by the other three justices deciding the case and, in fact, two of the justices never reached the State constitutional issue.

■ The case before the court today presents us with an opportunity to establish the standard to be applied in determining whether probable cause exists to support the issuance of a search warrant under part I, article 19 of the New Hampshire Constitution, in a warrant application based upon information supplied by an informant. We conclude that the flexibility of the totality-of-the-circumstances approach will further the nontechnical, common-sensical view of probable cause to which this court has traditionally subscribed. *See State v. Sands*, 123 N.H. at 604, 467 A.2d at 223;

*State v. Breest,* 116 N.H. 734, 743–44, 367 A.2d 1320, 1328 (1976). As the United States Supreme Court has said of probable cause:

> "In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved."

*Brinegar v. United States,* 338 U.S. 160, 175 (1949). A rigid application of the test described in *Mandravelis,* as suggested by the defendant, where each element of the test must be satisfied by independent evidence, not only would seem contrary to the holding in *Mandravelis,* but would encourage hypertechnicality in the interpretation of affidavits in support of search warrants. It would also run afoul both of the concept of probable cause as a practical, realistic standard, and of the rule often stated by this court that "[r]eviewing courts should pay great deference to a magistrate's determination of probable cause and should not invalidate a warrant by interpreting the evidence submitted in a hypertechnical sense." *State v. Doyle,* 126 N.H. 153, 160, 489 A.2d 639, 644 (1986) (quoting *State v. Sands supra*); *see also State v. Breest supra.* Accordingly, we hold that the totality-of-the-circumstances test is the appropriate standard to be applied under part I, article 19 of the New Hampshire Constitution in determining the validity of a search warrant issued on the basis of information from an inform-ant.

■ The requirements of the *Aguilar-Spinelli* and the *Man-dravelis* tests, including the elements of "veracity" and "basis of knowledge," will remain, however, as important factors to be considered by judges and magistrates in determining whether probable cause exists in such cases. *See Illinois v. Gates,* 462 U.S. at 233. In addition, other indicia of reliability, such as corroboration by police officers, may be used to supply the missing factors relative to the informant and the informant's information in determining the existence of probable cause. *See Illinois v. Gates,* 462 U.S. at 241–42; *see also Spinelli v. United States,* 393 U.S. at 415; *State v. Mandravelis,* 114 N.H. at 638, 325 A.2d at 796. In this era of new federalism, it is important to note that although this standard is similar to that established by the United States Supreme Court in *Gates,* the test which we adopt here today is our own interpretation of the New Hampshire Constitution, independent of any federal

decisions interpreting the totality-of-the-circumstances test applied in fourth amendment analysis.

Having set forth the appropriate standard to be applied, we now proceed to an application of this standard to the search warrant in question. The December 9th informant, the primary informant relied upon in the affidavit, stated that the defendant was a supplier of cocaine and that the informant would be able to purchase cocaine from the defendant. This conclusory statement by the informant, standing alone, would not have provided a sufficient basis for the judge to have made an independent determination of probable cause. *See Illinois v. Gates, supra* at 239; *Mandravelis, supra* at 637, 325 A.2d at 796. However, it was the ensuing sequence of events detailed in the affidavit, and the substantial police corroboration of the information received from the informant, which provided the issuing judge with a sufficient basis for determining that probable cause existed.

For example, each of the telephone calls which the informant alleged that he had received from the defendant could reasonably be found to have coincided precisely with a corresponding movement at the defendant's residence. Immediately following Detective Stinglen's observation of the two vehicles leaving the defendant's residence, the informant reported to Stinglen that he had received a call from the defendant, who told him that he would be getting the cocaine shortly and would call again when it was available. This statement was corroborated when, only 15 minutes later, Detective Stinglen observed one of the vehicles return to the house and the operator of the vehicle enter the house carrying a large brown bag. Moments later, the informant reported that the defendant had contacted him and advised him that the cocaine was available. This "seemingly innocent activity," observed by Detective Stinglen at the defendant's residence, "became suspicious in light of the initial tip." *See Illinois v. Gates*, 462 U.S. at 243 n.13 (quoting *People v. Gates*, 85 Ill. 2d 376, 396, 423 N.E.2d 887, 896 (1981) (Moran, J., dissenting)).

■ In addition, Detective Stinglen stated that he had received information from Detective Supervisor Fenniman that a separate informant, the November 20th informant, whose past tips had resulted in over twenty indictments, had indicated to Detective Fenniman that Peter Carroll was selling cocaine in ounce quantities. This informant also described the location of the defendant's residence, the same residence at which Detective Stinglen eventually conducted the "controlled buy." That Detective Stinglen received this information from Detective Fenniman rather

than directly from the informant in no way impugns the reliability of the information. It is reasonable for a police officer to rely on information from a fellow officer. In this case, the fellow officer's information was entitled to weight because the informant had provided information of proven reliability which resulted in over twenty indictments. *State v. Beaulieu*, 119 N.H. 400, 403, 402 A.2d 178, 181 (1979). While this information, by itself, may not have supported a finding of probable cause, it provided some further corroboration of the primary informant's information.

The independent police corroboration involved in this case was similar to that which was present in *Draper v. United States*, 358 U.S. 307 (1959). In *Draper*, an informant reported to police that Draper would be returning to Denver from Chicago by train on one of two dates and would be carrying heroin. The informant gave the officer a detailed description of Draper and the clothing he would be wearing. He also indicated that Draper would be carrying a tan zipper bag and walking at a fast pace. *Id.* at 309. The informant was correct in all of his predictions. The police officer then stopped and arrested Draper, searched his person, and discovered the heroin. The Court held that the officer's verification of the informant's statements gave him "reasonable grounds" to believe that Draper was carrying heroin. *Id.* at 313.

The independent police corroboration in the present case, however, was even more substantial. The police corroborated the informant's statement that he could obtain drugs from the defendant by conducting a "controlled buy" at the defendant's residence. While Detective Stinglen did not observe an actual sale of drugs by the defendant, he could corroborate that the informant obtained drugs from the defendant's home. Detective Stinglen personally observed the informant enter the defendant's residence with no contraband on his person. Shortly thereafter, he observed the informant leave the house and surrender a packet of cocaine which he alleged that he had purchased from the defendant. Detective Stinglen observed no one enter or leave the residence while the informant remained inside. This "controlled buy," together with the corroboration of the telephone calls, lends credence to the informant's statement that the defendant was selling drugs from his home. "[B]ecause an informant is right about some things, he is more probably right about other facts, usually the critical, unverified facts." *Spinelli v. United States*, 393 U.S. at 427 (White, J., concurring). Also, probable cause, as the term itself implies, does not require a finding of absolute certainty. *See State v. Jaroma*, 128 N.H. at 428, 459 A.2d at 279–80 (citation omitted). The independent

police corroboration in this case, therefore, like that in *Draper* and in *Mandravelis*, was sufficient to allow the magistrate to assess independently the reliability of the informant's statements.

■ The trial court in its order cited Chief Justice Brock's opinion in *State v. Bradberry*, 129 N.H. 68, 522 A.2d 1380, as support for the proposition that the "lack of information relating to the credibility of [the] informant" on the face of the affidavit "should preclude issuance" of a search warrant. The trial court apparently interpreted *Bradberry* to preclude a finding of probable cause where, as has admittedly occurred here, the affidavit contains no allegations that Detective Stinglen had used the primary informant in the past or that he knew this informant's reputation for veracity. It does not follow, however, that such an affidavit may not support a finding of probable cause. Indeed, under a proper application of the totality-of-the-circumstances test, a basis for establishing the credibility of an informant may be supplied by independent police corroboration. *See Illinois v. Gates*, 462 U.S. at 241–42; *see also State v. Andrews*, 125 N.H. 158, 164, 480 A.2d 889, 892–93 (1984); *Mandravelis*, 114 N.H. at 638, 325 A.2d at 796.

■ The trial court found, however, that the informant's "allegations were never corroborated." Such a finding is unsupported by the evidence. As we have discussed at length in the preceding paragraphs, and need not here reiterate, the independent police corroboration in this case was substantial. Thus, for all of the above stated reasons, we find the affidavit sufficient under part I, article 19 of the New Hampshire Constitution to support a finding of probable cause. We note that the State constitutional standard which we have adopted and applied here today affords the same protection as that provided by the Federal Constitution. *See Illinois v. Gates*, 462 U.S. 213. Therefore, we need not examine the fourth amendment issue. *See State v. Ball*, 124 N.H. at 232, 471 A.2d at 351.

We now turn to the question whether the trial court erred in suppressing the evidence on the ground that the affidavit contained material misrepresentations which were intentionally or recklessly made. At the suppression hearing, the defendant argued that the following statements made by the informant were false: the statements regarding the phone calls from the defendant relative to the availability of the drugs, and the informant's allegations that he had bought the drugs from the defendant during the course of the "controlled buy." In support of this claim, the defendant produced affidavits of two of the defendant's friends indicating that

the defendant was not at his residence either at the time the alleged phone calls were made, or at the time the "controlled buy" took place. On the basis of this evidence, the trial court found that the "affidavit consisted largely of misrepresentations." The court further found that because the State had failed to seek corroboration, it had failed to meet its burden of showing that the misrepresentations were neither intentional nor reckless. The court thus granted the defendant's motion to suppress the evidence seized pursuant to the search warrant.

The trial court's reliance on the informant's alleged misstatements, however, as a ground for suppressing the evidence, was misplaced. The appropriate focus in attacking a facially valid warrant on the ground that it contains misrepresentations is whether it contains misrepresentations made by the *affiant*, the police officer. *See State v. Valenzuela*, 130 N.H. 175, 191, 536 A.2d 1252, 1263 (1987); *see also Rugendorf v. United States*, 376 U.S. 528, 533 (1964). In *State v. Valenzuela*, we held that under part I, article 19 of the New Hampshire Constitution a defendant is entitled to a hearing for the purpose of attacking a facially valid warrant once a preliminary showing has been made that the supporting affidavit contains material misrepresentations that were knowingly or recklessly made by a police officer. *Valenzuela supra; see also State v. Spero*, 117 N.H. 199, 204, 371 A.2d 1155, 1158 (1977). Thereafter, the defendant is entitled to relief only upon demonstrating that the material misstatements were made knowingly or recklessly. *Valenzuela supra; Spero, supra* at 205, 371 A.2d at 1158.

The defendant in this case did not allege that any misrepresentations were made by Detective Stinglen. The defendant thus failed to make the required preliminary showing that the affidavit contained material misrepresentations made by a police officer. *See Valenzuela supra.* Moreover, the trial court's finding, that the State had failed to seek corroboration of the informant's allegedly false statements and was therefore reckless in including these statements in the affidavit, is not founded in fact. Detective Stinglen had reasonable grounds to believe the informant's statements, based on the following: the police surveillance of the defendant's residence, revealing activity which corresponded to the telephone calls which the informant alleged to have received from the defendant; the information relative to the defendant's drug activity which Detective Stinglen received from Detective Fenniman; and, most importantly, the "controlled buy" which Detective Stinglen conducted at the defendant's residence. Indeed, when

determining whether a misstatement in an affidavit was recklessly made, the appropriate inquiry is whether the affiant had "reasonable grounds for believing the truth of the facts attested to." *State v. Doyle,* 126 N.H. at 156, 489 A.2d at 642; *see also State v. Spero,* 117 N.H. at 204, 371 A.2d at 1158. We note that the federal constitutional standard relative to misrepresentations in affidavits is identical to our own and does not compel a different result. *See Franks v. Delaware,* 438 U.S. 154, 155–56 (1978); *see also State v. Valenzuela,* 130 N.H. at 191, 536 A.2d at 1263.

Thus, based upon the uncontroverted facts of this case, and upon the law relative to the determination of probable cause which we have emphasized today, we hold that the search warrant was based upon probable cause and therefore properly issued, and that the motion to suppress should have been denied.

*Reversed and remanded.*

BATCHELDER, J., concurred specially; the others concurred.

BATCHELDER, J., concurring specially: I concur in the result reached by the majority but disagree with the analysis insofar as it uses the totality-of-the-circumstances test to obtain that result. As I made clear in my concurrence in *State v. Bradberry,* 129 N.H. 68, 522 A.2d 1380 (1986), supplanting the clear standards for determining probable cause enunciated in *State v. Mandravelis,* 114 N.H. 634, 325 A.2d 794 (1974) with the standardless *Illinois v. Gates,* 462 U.S. 213 (1983), analysis is bad law. I would retain the *Mandravelis* analysis, as set forth by Justice Grimes, under our State Constitution and would not adopt the totality-of-the-circumstances test. *See, e.g., People v. Griminger,* 71 N.Y.2d 635, 524 N.E.2d 409, 529 N.Y.S.2d 55 (1988) (declining to adopt *Gates* test under State Constitution); *People v. Campa,* 36 Cal. 3d 870, 686 P.2d 634, 206 Cal. Rptr. 114 (1984) (same); *Commonwealth v. Upton,* 394 Mass. 363, 476 N.E.2d 548 (1985) (same); *State v. Kimbro,* 197 Conn. 219, 496 A.2d 498 (1985) (same); *State v. Jackson,* 102 Wash. 2d 432, 688 P.2d 136 (1984) (same); *State v. Jones,* 706 P.2d 317 (Alaska 1985) (same); *State v. Christen,* 79 Or. App. 774, 720 P.2d 1303 (1986) (same); *see also State v. Vallou,* 148 Vt. 427, 535 A.2d 1280 (1987). In this case, however, the facts are sufficient to uphold the validity of the search warrant even under the *Mandravelis* test. For that reason, I concur in the result.