Hillsborough
No. 87-289

## The State of New Hampshire

### v.

### Carroll Hazen

December 9, 1988

*Stephen E. Merrill*, attorney general (*Cynthia L. White*, attorney, on the brief and orally), for the State.

*Roussos & Boeckeler*, of Manchester (*John C. Boeckeler* on the brief and orally), for the defendant.

THAYER, J.  The defendant, Carroll Hazen, was found guilty after a jury-waived trial by the Superior Court (*Pappagianis*, J.) of possession of cocaine, and of possession of cocaine with the intent to distribute, in violation of RSA chapter 318-B. The defendant appeals from an order of the Superior Court (*Dalianis*, J.) denying his motion to suppress evidence seized from his person and his residence pursuant to search warrants issued by the Concord District Court (*Robbins*, J.). We affirm the order of the trial court.

On October 3, 1985, State Police Sergeant Gary M. Sloper applied for a warrant to search the attic room shared by Carroll Hazen and John Coyne located in the residence of Elizabeth Coyne, on School Street in Hillsborough, and to search the person of Carroll Hazen, for cocaine, weighing scales and drug paraphernalia, records of drug transactions, monies associated with drug sales, bank safe deposit keys, and firearms. In addition, Sergeant Sloper sought a second warrant to search for similar items in a brown 1974 Mercury Montego registered to Carroll Hazen. In support of these

applications, Sergeant Sloper executed two identical affidavits in which he alleged the following facts.

Sergeant Sloper received information from a confidential informant that Carroll Hazen was selling cocaine in the Hillsborough area. The informant told Sergeant Sloper that Hazen commonly sold cocaine from his residence. In addition, the informant reported that Hazen commonly drove to various drinking establishments, where he would sell drugs from his vehicle, and that Hazen commonly stored drugs in his vehicle. The informant stated that Hazen shared a room with John Coyne on the third floor of Coyne's mother's residence on School Street in Hillsborough. The informant described Hazen as being 6'2"–6'3" tall, 35–38 years old, of stocky build, and having brown hair. The informant described John Coyne as being approximately 33 years old, short, and chubby. The informant further described Hazen's vehicle as being a brown Mercury with a New Hampshire registration.

Sergeant Sloper had personal knowledge of who Carroll Hazen was and of where Carroll Hazen lived, and was familiar with the vehicle Hazen normally operated. Thus, Sergeant Sloper was able to ascertain that the informant was accurate in his description of Hazen's vehicle and the location of his residence. In addition, Sergeant Sloper ran a check with the New Hampshire Motor Vehicle Department which revealed that Hazen owned a brown 1974 Mercury Montego, New Hampshire registration 984445. The State driver's license records revealed that Hazen was 6'2" tall, weighed 200 pounds, and had brown hair and hazel eyes, and that his date of birth was 11/23/49.

The informant also told Sergeant Sloper that the informant had purchased cocaine from Carroll Hazen in the past. Although the informant said he had never purchased drugs from John Coyne, the informant alleged that Coyne had knowledge of Hazen's drug activities since Coyne had, on several occasions, told the informant when Hazen had had a supply of cocaine, and had been present when the informant purchased cocaine from Hazen. In addition, Sergeant Sloper checked Hazen's criminal record and discovered that Hazen had been convicted for a violation of the Controlled Drug Act (a felony) in 1975.

Sometime during the week of September 1, 1985, Sergeant Sloper had the informant conduct a "controlled buy" of cocaine in the following manner. Sergeant Sloper met with the informant and searched his person and his vehicle to ensure that the informant was not carrying contraband or cash. Sergeant Sloper then provided the informant with money sufficient to purchase a certain

quantity of cocaine and followed the informant to a residence in Hillsborough that Carroll Hazen had been frequenting. After leaving the residence, the informant proceeded directly to Sergeant Sloper's location, where Sergeant Sloper conducted a search of the informant. This search produced a folded paper packet containing a white powdery substance. Sergeant Sloper found that the informant no longer had in his possession the money with which Sergeant Sloper had earlier provided him. The informant told Sergeant Sloper that he had purchased the substance from Carroll Hazen. An analysis performed by the State Police Laboratory revealed that the substance contained cocaine.

Sergeant Sloper had the informant perform a second "controlled buy" during the week of September 29, 1985. Following the same procedures outlined above, Sergeant Sloper met with the informant, searched him, provided him with a certain amount of money, and followed him to the residence of Carroll Hazen and John Coyne, where the informant entered the residence and exited shortly thereafter, proceeding directly to Sergeant Sloper's location. Sergeant Sloper then searched the informant and the informant's vehicle and discovered a folded paper packet containing a white powdery substance. The informant stated that he had purchased the substance from Carroll Hazen. Sergeant Sloper also found that the informant no longer had the money in his possession. Sergeant Sloper field tested the substance and determined it to contain cocaine.

Upon this information, a justice of the Concord District Court (*Robbins*, J.) subsequently issued both search warrants. The searches executed pursuant to those warrants led to the seizure of cocaine and drug paraphernalia from the defendant's person and residence. The defendant was indicted on one count of possession of cocaine and two counts of possession with the intent to distribute. The defendant subsequently moved to suppress the evidence seized pursuant to the warrants on the grounds that the searches violated part I, article 19 of the New Hampshire Constitution and the fourth amendment to the United States Constitution. The Superior Court (*Dalianis*, J.), applying the "totality-of-the-circumstances" test established in *Illinois v. Gates*, 462 U.S. 213 (1983), to both the State and federal constitutional claims, denied the defendant's motion to suppress. The trial court found that Sergeant Sloper had "verified where possible the information provided by the confidential informant" and, in addition, had had the confidential informant perform two "controlled buys." The trial court thus concluded that the affidavits in support of the applications for the search warrants

provided sufficient information for the judge to have determined that probable cause existed.

The issue with which we are presented today is whether the trial court applied the correct standard in determining whether probable cause existed to support the issuance of the search warrants, based on information provided by an informant, and if so, whether the trial court erred in determining that probable cause existed under that standard.

We first address the defendant's State constitutional claim, and thereafter reach the federal claim only to the extent that the Federal Constitution provides greater protection. *See State v. Ball*, 124 N.H. 226, 231–32, 471 A.2d 347, 350–51 (1983). In an opinion which we have today issued, we adopted a totality-of-the-circumstances test, similar to the one adopted by the United States Supreme Court in *Illinois v. Gates*, as the appropriate standard to be applied under part I, article 19 of the New Hampshire Constitution when determining the validity of a search warrant, based upon information obtained from an informant. *See State v. Carroll*, 131 N.H. 179, 552 A.2d 69 (1988). This standard is consistent with the rule, which this court has so often stated, that "[a]ffidavits in support of search warrants must be read, tested and interpreted in a realistic fashion and with common sense . . ." and that "[r]eviewing courts should not invalidate a warrant by interpreting the evidence submitted in a hypertechnical sense." *State v. Sands*, 123 N.H. 570, 604, 467 A.2d 202, 223 (1983). In *State v. Mandravelis*, 114 N.H. 634, 325 A.2d 794 (1974), this court, applying the prevailing federal constitutional analysis at that time, set forth a list of "some of the basic requirements for a valid search warrant" based upon information received from an informant. *Id.* at 637, 325 A.2d at 796. These requirements essentially constituted the "basis of knowledge" and "veracity" elements of the two-pronged test established in *Aguilar v. Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 410 (1969). The standard which we have adopted today does not require that the factors set forth in *State v. Mandravelis supra* be satisfied by independent evidence; rather, they are merely relevant considerations for the magistrate or judge to consider in determining whether, in the totality of the circumstances, probable cause exists. In addition, other indicia of reliability, such as independent police corroboration, may be used to supply the missing factors relative to the informant and the informant's information in determining the existence of probable cause. *See Carroll, supra* at 187, 552 A.2d at 74; *see also State v. Andrews*, 125 N.H. 158, 164, 480 A.2d 889, 892–93

(1984) (independent police corroboration has always been "a significant factor" in determining probable cause).

We now proceed to an application of this standard to the present case. The affidavit in question clearly indicated that the informant had a "basis of knowledge" for the statements he made to Sergeant Sloper. The informant alleged that he had purchased cocaine from the defendant in the past. Thus, the affidavit indicated how the informant had obtained the information that Hazen was selling cocaine; *i.e.*, by personal knowledge. *See State v. Mandravelis*, 114 N.H. at 637, 325 A.2d at 796.

Although the affidavit did not specifically allege facts attesting to the veracity of the informant, other indicia of truthfulness were present in this case. First, there was independent police corroboration of the informant's descriptions of Carroll Hazen, his residence, and his vehicle. "The corroboration of some information provided by an informant deserves weight in assessing that informant's credibility and the reliability of the information provided." *State v. Andrews*, 125 N.H. at 164, 480 A.2d at 893 (citing *State v. Thorp*, 116 N.H. 303, 307, 358 A.2d 655, 659 (1976)). Although this corroboration was of innocent detail, the informant's accuracy in providing this information lends some credence to his other statements. "[B]ecause an informant is right about some things, he is more probably right about other facts, usually the critical, unverified facts." *Spinelli v. United States*, 393 U.S. at 427 (White, J., concurring); *see also Draper v. United States*, 358 U.S. 307, 313 (1959).

Second, the informant's claim that he had purchased cocaine from the defendant in the past is a declaration against penal interest. It is reasonable to infer the credibility of an informant where he makes an admission against his own penal interest. *State v. Stiles*, 128 N.H. 81, 84, 512 A.2d 1084, 1087 (1986). The fact that the informant may have been "paid or promised a break does not eliminate the residual risk and opprobrium of having admitted criminal conduct." *United States v. Harris*, 403 U.S. 573, 583–84 (1971). Although the informant retained a guarantee of anonymity which would effectively eliminate the possibility of prosecution for the admitted offense, he has nevertheless provided law enforcement officials with inculpatory evidence which may return to haunt him at some point in the future should the police desire to begin an investigation of him for narcotics violations. In addition, the informant has taken the chance that those with whom he dealt during the "controlled buys" would, by way of deduction, discover

his identity, thus placing his safety at risk. Although Sergeant Sloper took steps to prevent such disclosure, it is nonetheless a risk which the informant has assumed. "Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements." *United States v. Harris, supra* at 583.

Finally, the "controlled buy" itself substantiated the informant's allegations, supplying additional reasons for crediting his statements. *See State v. Carroll,* 131 N.H. at 189, 552 A.2d at 75. On two separate occasions, Sergeant Sloper conducted "controlled buys" of cocaine through the informant. The second "controlled buy" occurred at the defendant's residence. As Sergeant Sloper testified at the suppression hearing, he observed the informant enter the defendant's residence carrying no contraband. The informant emerged shortly thereafter with a packet of cocaine which he alleged he had purchased from the defendant. This was absolute corroboration that the informant had purchased cocaine at the residence where the informant alleged that it was being sold. Although Sergeant Sloper had no way to ascertain that it was the defendant who actually sold that cocaine to the informant, it was reasonable to infer from this information, together with the first "controlled buy," where the informant had also stated that the purchase was made from the defendant, that drug trafficking was taking place at the defendant's residence, and that the defendant was somehow involved. *See Carroll, supra* at 189, 552 A.2d at 75.

Indeed, complete certainty has never been required by this court when determining whether probable cause to search exists. *State v. Marcotte,* 123 N.H. 245, 248, 459 A.2d 278, 279–80 (1983). In *State v. Marcotte,* we held that in order "[t]o obtain a search warrant, the police must show that at the time of the application for the warrant there is a substantial likelihood of finding the items sought; they need not establish with certainty, or even beyond a reasonable doubt, that the search will lead to the desired result." *Id.,* 459 A.2d at 280. In this case, the affidavit indicated the informant's "basis of knowledge" for his statements. Additionally, although the affidavit lacked specific allegations of the informant's "veracity," it presented other indicia of reliability, including the independent police corroboration, the "controlled buys," and the informant's declaration against penal interest, all of which provided the judge with sufficient information to have made an independent assessment of the reliability both of the informant and of the information provided by him. We hold, therefore, that the issuing judge, considering the totality of the circumstances, had

a substantial basis for concluding that probable cause existed under part I, article 19 of the New Hampshire Constitution to support the issuance of the search warrants. Because the federal constitutional standard is similar to our own and does not compel a different result, we need not address the defendant's fourth amendment claim. *See Carroll, supra* at 190, 552 A.2d at 76; *see also Illinois v. Gates*, 462 U.S. at 238–39.

*Affirmed.*

BATCHELDER, J., concurred in the result for reasons stated in his concurrence in *State v. Carroll*; the others concurred.