Coos
No. 88-496

## The State of New Hampshire

v.

## Lewis H. Davis

May 24, 1990

*John P. Arnold,* attorney general (*Andrew W. Serell,* assistant attorney general, on the brief and orally), for the State.

*Twomey & Sisti Law Offices,* of Chichester (*Mark L. Sisti* on the brief and orally), for the defendant.

SOUTER, J.  Following convictions for possession of a controlled drug with intent to sell, RSA 318-B:2 (1984) (current version in Supp. 1989), and possession of more than a pound of a cannabis-type drug, RSA 318-B:2, :26 (1984) (current version in Supp. 1989), the defendant claims that evidence introduced against him was seized under a warrant issued on insufficiently corroborated information supplied by an informer. The Superior Court (*Perkins,* J.) ruled otherwise, and we affirm.

The details of the defendant's criminal activity are relevant to this appeal only insofar as they appear from the affidavit filed with the application for the warrant issued to search his Jefferson house for illicit drugs, paraphernalia and records indicative of criminal drug dealing. From that lengthy affidavit, it is sufficient to consider the following allegations.

On February 21, 1987, Manchester Police Department Detective Richard O'Leary, then assigned to the State Drug Task Force, stated

under oath that an unnamed informer charged with a drug offense had agreed to provide information about the defendant, Lewis H. Davis, in return for "consideration" in the disposition of the charges pending against himself. The informer apprised the police of the defendant's physical characteristics; described his dwelling and its appurtenances in Jefferson; noted his prior residence in Ohio; identified his auto by color, model, make and period of manufacture; and supplied the telephone number used in his ostensible occupation as a salesman of vitamins. The police verified substantially all of the facts so disclosed, by resort to motor vehicle and telephone company records and by discreet inspection of the Jefferson property. The informer stated that for two or three years he had purchased marijuana from the defendant, most recently a four-pound quantity on the preceding January 29th. The informer said that in the course of ten or fifteen visits to the Jefferson house during that period he had seen marijuana on the porch and in the defendant's second-floor quarters.

Detective O'Leary then described a telephone call placed in his presence on February 19 by the informer to the defendant at the previously verified number, resulting in a conversation intercepted and taped under the authority of RSA 570-A:2, II(d). The informer had promised he would pay some of the money already owed to the person answering, whom he had asked to "front" another "3 pounds." The detective described the informer's subsequent call in his presence to the same number the next day, February 20, likewise subject to interception. According to the detective, the tape revealed that someone answering to the name of "Lewis" took the call, said he would be in Manchester on Saturday between 10 and 10:30 a.m. and, when asked if he would bring some "pot," answered that he "would have the stuff."

The detective summarized the results of police surveillance the next day, Saturday, February 21. The defendant drove from his Jefferson house about 8:15 a.m. and was followed as far south as Concord, where the police lost him at 10:35 a.m. They then went to the Manchester "delivery location," where the defendant arrived about 11:30 a.m., at which point he was promptly arrested and was found to have $1,127 in cash on his person. (Although the affidavit described drugs and cash seized from the defendant's car, these were later ruled to be fruits of an unlawful search. In passing on the warrant's challenged validity, the trial court therefore excised the references to the fruits of the car search, *see Franks v. Delaware*, 438

U.S. 154, 155–56, 171–72 (1978); *State v. Stearns*, 130 N.H. 475, 484, 547 A.2d 672, 677 (1988); we do the same.) The detective disclosed that the defendant remained under arrest on the drug charges.

The detective concluded the affidavit with personal opinions based on experience said to have been gained in some three hundred drug investigations and education at a school run by the United States Drug Enforcement Administration. He stated that because drug dealers are often drug users as well, they are apt to keep drugs for personal use at their homes, where weapons, records of dealing, dealers' equipment, and money used in their transactions are also likely to be found.

█   This affidavit's adequacy to establish probable cause for the warrant to search the defendant's Jefferson premises (where drugs and other incriminating evidence were found) is to be judged by the following standard under both part I, article 19 of the State Constitution, and the fourth amendment of the National Constitution:

> "'[G]iven all the circumstances set forth in the affidavit before [the magistrate], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, [was there] a fair probability that contraband or evidence of a crime [would] be found in [the] particular place [described in the warrant?]'"

*State v. Carroll*, 131 N.H. 179, 186, 552 A.2d 69, 73 (1988) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). In challenging the warrant under this standard, the defense rests everything on the affidavit's supposed insufficiency to establish the informer's truthfulness as the foundation for accepting the allegations attributed to him, and on its failure otherwise to corroborate the assertions of fact on which the finding of probable cause must have rested. On the contrary, the trial court was entitled to find the combined evidence of veracity and corroboration more than adequate to support the warrant.

It is true, of course, that corroboration before February 19 went only to details that did not of themselves incriminate the defendant, although confirmation even of such innocent facts as the informer's description of derelict autos and T.V. antennas in the defendant's yard lent some weight to the informer's other statements. *See State v. Hazen*, 131 N.H. 196, 201, 552 A.2d 77, 80 (1988). It is likewise true that the informer's whole story had to be taken whence it came, from the mouth of a defendant trying to save his own skin. But participation in plea bargaining imposes no automatic disqualification on an

informer, *see id.*, and we recognize that some degree of support accrues even to an unnamed plea-bargaining informer who makes admissions against his own penal interest, as this informer did in accounting for years of illegal drug purchases from the defendant, for he thereby incurs "the residual risk and opprobrium of having admitted criminal conduct." *United States v. Harris*, 403 U.S. 573, 583–84 (1971), *quoted in State v. Hazen supra.* And there were other indications of veracity in this informer's story. It was specific enough in describing criminal activity to subject the informer to prosecution for making a false report to a law enforcement officer, *see* RSA 641:4, I, had it proven to be untrue. And whether it was true or false, the informer assumed the risk that if the police repeated his story (as in an affidavit on a search warrant application that might later be open to a defendant's examination), they would reveal his identity and subject him to retaliation. Lying is not to be done lightly in these circumstances.

■ The affidavit does not, however, force us to make nice calculations of truthfulness, for its account of the events on February 19, 20 and 21 not only points to the informer's veracity, but supplies its own predicate for probable cause. It takes no special insight to understand that "Lewis's" undertaking to deliver the "stuff," and the defendant's drive to Manchester with an abnormal amount of cash on the morning set for the delivery, revealed someone in the business of dealing in marijuana and ready to sell it to the informer who placed the order. Thus, the accounts of the phone conversations and the defendant's trip to Manchester were significant, first, in confirming the informer's story about prior dealings and his observations about marijuana at the Jefferson house, and, second, in supplying steps in a chain of reasoning that the defendant's house would probably contain drugs, at least for personal use, and the other appurtenances of dealing that Detective O'Leary had said were often found in a dealer's dwelling.

The defendant is of course correct that the Manchester trip did not result in a "controlled buy" of drugs, as in *Hazen*, which would have enhanced the informer's story to a spectacular degree. But that is no matter. It is still true that the affidavit's account of the telephone conversations and the Manchester trip capped the evidence that the defendant was currently a dealer, and that evidence was an adequate source of probable cause to expect drugs and paraphernalia in his house, sufficient to justify the warrant.

*Affirmed.*

All concurred.