Strafford
No. 94-487

THE STATE OF NEW HAMPSHIRE

v.

BRYAN S. JOHNSON

December 28, 1995

*Jeffrey R. Howard,* attorney general (*Susan G. Morrell,* assistant attorney general, on the brief, and *Jane E. Young,* assistant attorney general, orally), for the State.

*Anthony A. McManus,* of Dover, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Bryan S. Johnson, pleaded guilty to two counts of selling cocaine. *See* RSA 318-B:2 (1995); RSA 318-B:26, I (1995). He also admitted to sufficient facts to be found guilty of one count of possession of cocaine with the intent to sell, and one count of possession of marijuana, *see* RSA 318-B:2, :26, while reserving his right to perfect this appeal. He appeals the Superior Court (*Mohl,* J.) denial of his motion to suppress certain items seized during the execution of a search warrant and his motion to suppress statements that he made during the execution of the same warrant. We affirm.

On October 7, 1993, New Hampshire State Police Corporal Brian Hester obtained a warrant to search the defendant's apartment, automobile, and person, attesting by affidavit to the following facts. A police confidential informant (the informant) had informed Hester that "it" had purchased cocaine from the defendant on several occasions. Hester described the informant as "very reliable," recounting that the informant previously had supplied information leading to an arrest and to a seizure of a large quantity of cocaine. Hester stated that the informant had identified the defendant by name and address and had accurately identified the color and style of the defendant's automobile and motorcycle. The informant also reported to Hester its observation of "scales used to measure controlled drugs" inside the defendant's apartment.

The affidavit further stated that during September 1993, the defendant sold the informant a quantity of cocaine in two controlled purchases. Hester had observed the informant arrive, enter, and leave the place of these purchases, one at the defendant's apartment and one at a local Burger King. On each occasion, after the informant arrived at the place of sale, the defendant left to obtain the drugs. On one occasion, the informant observed marijuana in a drawer in the defendant's apartment. On the basis of this information, Hester sought and obtained a warrant to search the defendant's apartment, car, and person for "drug paraphernalia, records and ledgers of drug transactions, evidence of investment and expenditure of proceeds derived from illegal drug trafficking, and records of financial transactions relating to drug trafficking."

The defendant arrived home as the police were about to execute the warrant on October 7, 1993, the day the warrant was issued. In

the parking lot outside of the defendant's apartment, Hester, along with another officer, approached the defendant and informed him that they were executing a warrant to search his person, home, and automobile. The trial court found that at this time Hester informed the defendant "that he was not under arrest." One of the officers performed a brief search of the defendant for weapons. Hester then "took" the defendant over to his unmarked car and "had" him sit in the front seat.

Once in the car, one of the officers suggested that the defendant would benefit by cooperating with the police investigation. As the trial court found, "Hester told the defendant he knew the defendant was a teacher and that he didn't know what would happen if the school became aware of the situation." After this exchange, the defendant agreed to cooperate and pointed out to the officers the location of cocaine and marijuana in his apartment. Hester testified and the trial court found that the defendant was free to leave throughout this exchange, until the point when he showed the officers the location of drugs in his apartment.

The defendant moved to suppress statements he made and the drugs found during the execution of the search warrant, arguing that the search warrant was not supported by probable cause, and that he was not advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), when he was subjected to custodial interrogation as the police executed the search warrant. The trial court denied the motion challenging the adequacy of probable cause for the search warrant, and granted in part and denied in part the defendant's motion to suppress for failure to give *Miranda* warnings before custodial interrogation. The trial court suppressed the defendant's statements made after he showed the police the drugs in his apartment.

## I. Probable Cause

The defendant first argues that the search warrant obtained by Hester was not supported by probable cause, in violation of both the State and Federal Constitutions. We analyze the defendant's claim under the State Constitution first, *State v. Ball*, 124 N.H. 226, 231-32, 471 A.2d 347, 350-51 (1983), and reach his federal claim only if the Federal Constitution provides greater protection. *See State v. Carroll*, 131 N.H. 179, 184, 552 A.2d 69, 72 (1988). Because part I, article 19 of the New Hampshire Constitution provides the defendant with at least as much protection as the Federal Constitution in this area, *see id.*, we do not reach his federal claim. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983).

We review the sufficiency of an affidavit in demonstrating probable cause for a search warrant without deference to the trial court, unless there are any "controlling facts determined at the superior court level in the first instance." *State v. Decoteau*, 137 N.H. 106, 111-12, 623 A.2d 1338, 1342 (1993). We do "pay great deference to a magistrate's determination of probable cause and should not invalidate a warrant by interpreting the evidence submitted in a hypertechnical sense." *Carroll*, 131 N.H. at 187, 552 A.2d at 73 (quotation omitted). Probable cause to search exists "if a person of ordinary caution would justifiably believe that what is sought will be found through the search and will aid in a particular apprehension or conviction." *State v. Grimshaw*, 128 N.H. 431, 434, 515 A.2d 1201, 1203 (1986) (quotations omitted); *see State v. Davis*, 133 N.H. 211, 213, 575 A.2d 4, 6 (1990). We apply a totality-of-the-circumstances test to determine whether information obtained from an informant supports a finding of probable cause. *Carroll*, 131 N.H. at 187, 552 A.2d at 74. This approach includes factors testing the "veracity" and "basis of knowledge" of the informant, in addition to "other indicia of reliability, such as corroboration by police officers." *State v. Christy*, 138 N.H. 352, 357, 639 A.2d 261, 264 (1994) (quotations omitted).

We note that the defendant does not argue that the police exceeded the scope of the document and paraphernalia warrant to look for drugs. Accordingly, the sole issue on appeal is whether the search warrant was supported by probable cause. The State contends that there was probable cause to search these particular places for documents and paraphernalia because these sorts of items are likely to be present on an ongoing basis when a person is engaged in trafficking. We agree.

■ The affidavit supports a finding of probable cause. The affidavit describes the informant as having been "very reliable" in the past, his information having recently led to the arrest of a suspect on drug possession charges and the seizure of a quantity of cocaine. *Cf. State v. Silvestri*, 136 N.H. 522, 525-26, 618 A.2d 821, 823 (1992) (affidavit insufficient where it contains no indication of the confidential informant's veracity and no other indicia of reliability). The basis of the informant's knowledge was personal observation, as the informant described purchasing directly from the defendant. *See State v. Hazen*, 131 N.H. 196, 201, 552 A.2d 77, 80 (1988). The fact that the informant made such a declaration against his penal interest supports a finding of reliability as well, because "[i]t is reasonable to infer the credibility of an informant where [the informant] makes an admission against [the informant's] own penal

interest." *Id.* In addition, the affidavit describes two controlled buys involving the defendant, which independently corroborate the informant's statements. Although the circumstances of each of the buys indicated that he may not have kept *drugs* at his apartment on an ongoing basis, *see State v. Westover*, 127 N.H. 130, 132-33, 497 A.2d 1218, 1220 (1985), they do support a finding that the scales, or other incidents of drug trafficking, would be found there—or in his automobile—at the time the warrant issued. *See Silvestri*, 136 N.H. at 527, 618 A.2d at 824 (requiring nexus between the defendant's residence and the defendant's suspected drug dealing; no probable cause based merely upon defendant's status as a drug dealer). Under the totality of the circumstances, we conclude that the affidavit demonstrates a fair probability that drug paraphernalia or documents would be found in the defendant's apartment or car, or on his person. *See Davis*, 133 N.H. at 213, 575 A.2d at 6-7. The trial court was correct in denying the defendant's motion to suppress items seized from his apartment during the execution of this search warrant, on the basis that the warrant was supported by probable cause.

## II. *Entitlement to* Miranda *Warnings*

The defendant next contends, under both the State and Federal Constitutions, that certain statements he made during the execution of the warrant should have been suppressed because he was not advised of his *Miranda* rights when he was effectively under arrest. *See Miranda*, 384 U.S. at 478-79; *State v. Dedrick*, 132 N.H. 218, 224, 564 A.2d 423, 426-27 (1989), *cert. denied*, 494 U.S. 1007 (1990). We address his claim first under the State Constitution, *Ball*, 124 N.H. at 231-32, 471 A.2d at 350-51, referring to federal authority only to assist our analysis. Because federal law provides no greater protection to the defendant in this area, *State v. Lescard*, 128 N.H. 495, 496-97, 517 A.2d 1158, 1160 (1986), we do not address separately his claim under the Federal Constitution. *See Stansbury v. California*, 114 S. Ct. 1526, 1528-29 (1994).

Before the defendant's statements made during a custodial interrogation may be used as evidence against him, the State must prove, beyond a reasonable doubt, that he was warned of his constitutional rights, that he waived those rights, and that any subsequent statements were made knowingly, voluntarily and intelligently. *Torres*, 130 N.H. 340, 342-43, 540 A.2d 1217, 1219 (1988). The police must give *Miranda* warnings prior to questioning "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (*per curiam*). The determination whether a person was in

"custody" at the time of an interrogation is essentially a factual one, and we will uphold the superior court's findings unless they are contrary to the manifest weight of the evidence or are the result of a legal error. *Dedrick*, 132 N.H. at 224, 564 A.2d at 426-27.

The United States Supreme Court has defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Rhode Island v. Innis*, 446 U.S. 291, 298 (1980) (quotation and emphasis omitted). "Custody entitling a person to *Miranda* protections during interrogation requires formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *State v. Carpentier*, 132 N.H. 123, 126, 562 A.2d 181, 183 (1989) (quotations omitted). If there has been no formal arrest, the court must consider the degree to which the suspect's freedom of movement was curtailed, and "how a reasonable person in the suspect's position would have understood the situation." *State v. Carroll*, 138 N.H. 687, 696, 645 A.2d 82, 87-88 (1994).

■ The location of questioning is not, by itself, determinative: a defendant may be "in custody" in his own home, *see Orozco v. Texas*, 394 U.S. 324, 327 (1969), but not "in custody" at a police station, *see Mathiason*, 429 U.S. at 495. A defendant is not "in custody" for *Miranda* purposes merely because his freedom of movement has been curtailed so that he has been "seized" in a fourth amendment sense. *See Berkemer v. McCarty*, 468 U.S. 420, 439, 441-42 (1984). The trial court should review all circumstances of the encounter, considering in particular "the suspect's familiarity with his surroundings, the number of officers present, the degree to which the suspect was physically restrained, and the interview's duration and character." *Carpentier*, 132 N.H. at 127, 562 A.2d at 183.

The trial court found that

> the initial questioning of the defendant in Trooper Hester's vehicle was noncustodial. The trooper informed the defendant that he was free to leave after a search of his person, and a reasonable person would have felt free to walk away accordingly. The fact that the defendant was suspected of a crime does not convert the interview into a custodial interrogation.

We agree. The exchange in Hester's automobile took approximately ten minutes. At the suppression hearing, the defendant explained his decision to cooperate with the police thus: "I was trying to help myself out. I figured and understood through [Hester] that the only

way that I could help myself and my case at all was to roll over and move on up the ladder, as he said it, and identify the next person."

The trial court's conclusion that the defendant was not "in custody" for *Miranda* purposes until after he had pointed out the location of drugs in his apartment is supported by the record. *See Dedrick*, 132 N.H. at 224, 564 A.2d at 426-27. The defendant's motion to suppress statements made before that point, therefore, was properly denied.

*Affirmed.*

BRODERICK, J., did not sit; the others concurred.