Hillsborough-northern judicial district
No. 96-025

### THE STATE OF NEW HAMPSHIRE

v.

### WILLIAM R. DANIEL

May 28, 1997

*Steven M. Houran*, acting attorney general (*Jane E. Young*, assistant attorney general, on the brief and orally), for the State.

*Twomey & Sisti Law Offices*, of Chichester (*Mark L. Sisti* on the brief and orally), for the defendant.

JOHNSON, J. The defendant, William R. Daniel, was charged with two counts of possession of a controlled drug with intent to sell, *see* RSA 318-B:2 (1995), following a search of his Manchester residence pursuant to a warrant issued by the Manchester District Court (*Capistran*, J.) on May 5, 1994. The defendant challenged the search under both the New Hampshire and the United States Constitutions on the ground that the affidavit in support of the warrant was insufficient. The defendant's motion to suppress was denied by the Superior Court (*Abramson*, J.). The defendant appeals, arguing that the superior court erred in denying his motion to suppress. We affirm.

The search warrant issued on the basis of the affidavit of Detective Scott D. Chovanec, a Milford police officer assigned to the New Hampshire Drug Task Force. Detective Chovanec stated that he worked in an undercover capacity and averred that during the week of April 4, 1994, he met with Anthony R. Groleau and Marcel Beaudet to buy approximately a half ounce of cocaine from Groleau. The detective, Groleau, and Beaudet drove in Beaudet's vehicle to a residence on Grove Avenue where Beaudet said they would meet

"Billy," a man Beaudet described as a wheelchair-confined paraplegic who was a "heavy trafficker" in cocaine and marijuana. When the men arrived at the Grove Avenue residence, Detective Chovanec gave Beaudet $600 to purchase cocaine and watched him leave his vehicle and enter a side door of the Grove Avenue residence. Some minutes later, Beaudet exited the same door of the residence, came back to the car, and handed Detective Chovanec a plastic bag containing cocaine. Beaudet told Groleau and Detective Chovanec that Billy had sold him the cocaine and that he had seen approximately ten pounds of marijuana inside Billy's residence.

Detective Chovanec further averred that on April 13, 1994, he again went with Beaudet and Groleau to Billy's residence to buy approximately a half ounce of cocaine. Detective Chovanec again gave Beaudet $600 and watched him enter the Grove Avenue residence. Beaudet returned several minutes later with cocaine, which he said he had purchased from Billy.

On April 28, 1994, Detective Chovanec made arrangements with Groleau to buy more cocaine. Groleau informed Detective Chovanec that his source, Jeffrey Wheeler, had to pick up the cocaine from a "Billy D." of Manchester, who Groleau said was the same person as the Billy of Grove Avenue from whom they had previously obtained cocaine. Detective Chovanec went to Groleau's residence at approximately 4:30 p.m. on May 5, 1994, to pick up the cocaine. Groleau told Detective Chovanec that he had just spoken with Wheeler on the telephone and that Wheeler would arrive in twenty minutes with the cocaine.

At approximately the same time, Detective William Stockwell of the Manchester Police Department was conducting moving surveillance with detectives from the Drug Task Force and the Manchester Special Investigation Unit. As Detective Stockwell later related to Detective Chovanec, a vehicle driven by a woman believed to be Wheeler's wife left a Cherry Avenue residence at approximately 4:32 p.m. and drove to the previously-described Grove Avenue residence. The woman was observed leaving Grove Avenue and arriving back at the Cherry Avenue address by 4:43 p.m. Approximately ten minutes later, a man wearing a Los Angeles Raiders jacket left the Cherry Avenue residence and drove directly to Groleau's address.

At approximately 4:53 p.m., Detective Chovanec observed Wheeler, wearing a Los Angeles Raiders jacket, arrive at Groleau's apartment. Detective Chovanec gave $600 to Groleau, who went into a rear bedroom with Wheeler and returned a minute later with a plastic bag containing cocaine.

Detective Chovanec's affidavit also set forth the following information. Manchester police had been informed in February 1994 by a juvenile resident of 43 Grove Avenue that marijuana and cocaine trafficking was occurring at that address. The juvenile reported that his parents dealt drugs for their supplier, a wheelchair-confined paraplegic named Billy Daniel who lived in the basement portion of 43 Grove Avenue. In addition, information obtained in connection with a 1994 motor vehicle accident involving the defendant confirmed that he lived in the basement of 43 Grove Avenue and was a paraplegic confined to a wheelchair.

■ On appeal, the defendant argues that his motion to suppress should have been granted because there was no probable cause to issue the search warrant. Although the defendant's motion to suppress was based on both the New Hampshire and the United States Constitutions, the defendant's brief to this court addressed only his State constitutional claim. We need not decide, however, whether the defendant has waived his federal claim, *see State v. Field*, 132 N.H. 760, 765, 571 A.2d 1276, 1279 (1990), as "part I, article 19 of the New Hampshire Constitution provides the defendant with at least as much protection as the Federal Constitution in this area." *State v. Johnson*, 140 N.H. 573, 575, 669 A.2d 222, 225 (1995). A separate federal analysis would therefore be unnecessary in any event. *See, e.g., id.*

■ Part I, article 19 of our State Constitution requires that search warrants be issued only upon "cause or foundation, supported by oath or affirmation." *State v. Decoteau*, 137 N.H. 106, 111, 623 A.2d 1338, 1341 (1993) (quotation omitted). We have consistently interpreted this language as requiring that warrants be based on a determination of probable cause. *See, e.g., State v. Carroll*, 131 N.H. 179, 184, 552 A.2d 69, 72 (1988). Probable cause is established where "a person of ordinary caution would justifiably believe that what is sought will be found through the search and will aid in a particular apprehension or conviction." *Johnson*, 140 N.H. at 576, 669 A.2d at 225 (quotation omitted).

■ Our review of the superior court's order on the motion to suppress is *de novo*, except as to any "controlling facts determined at the superior court level in the first instance." *Decoteau*, 137 N.H. at 111-12, 623 A.2d at 1342. We do, however, "pay great deference to a magistrate's determination of probable cause and [we will] not invalidate a warrant by interpreting the evidence submitted in a hypertechnical sense." *Johnson*, 140 N.H. at 576, 669 A.2d at 225 (quotation omitted).

■ The defendant contends that Detective Chovanec's affidavit was fatally deficient because it failed to indicate the veracity and reliability of the "informants," Groleau and Beaudet. In particular, the defendant notes that the police had neither previously obtained information from Groleau and Beaudet nor used them to conduct any controlled buys from the defendant. We have not, however, required either showing where the affidavit otherwise establishes probable cause. *See, e.g., State v. Davis*, 133 N.H. 211, 214, 575 A.2d 4, 6-7 (1990) (controlled buy not necessary for a finding of probable cause); *Carroll*, 131 N.H. at 190, 552 A.2d at 75 (probable cause found although affidavit did not state that police "had used the primary informant in the past").

■ The affidavit in this case was sufficient to establish probable cause. We use the totality-of-the-circumstances test adopted in *Carroll* to review the sufficiency of an affidavit submitted in application for a search warrant:

> Given all the circumstances set forth in the affidavit before the magistrate, including the veracity and basis of knowledge of persons supplying hearsay information, was there a fair probability that contraband or evidence of a crime would be found in the particular place described in the warrant?

*State v. Silvestri*, 136 N.H. 522, 525, 618 A.2d 821, 823 (1992) (quotation omitted). The State argues that no affirmative showing that Groleau and Beaudet were credible was necessary because Groleau and Beaudet were unaware that Detective Chovanec was a police officer. Therefore, the State argues, they were not police informants in the "traditional" sense.

We need not decide this issue, however, because other information contained in the affidavit sufficiently corroborated their statements. *Cf. Davis*, 133 N.H. at 214, 575 A.2d at 6 (court not required to make nice calculations of truthfulness of informant where other information in the affidavit supplied its own predicate for probable cause). The affidavit detailed the personal observations of Detective Chovanec, supplemented by the surveillance conducted by Detective Stockwell. Those observations indicated that on two separate occasions Beaudet entered a house for the ostensible purpose of buying cocaine, and in fact had cocaine in his possession when he emerged. The police independently verified that the defendant lived at that address. The police had also received information from a resident of the house that several persons, including the defendant, were involved in drug trafficking at that address.

While the affidavit did not completely refute such possibilities as Beaudet having had the cocaine on him before he entered the defendant's residence, "complete certainty has never been required by this court when determining whether probable cause to search exists." *State v. Hazen*, 131 N.H. 196, 202, 552 A.2d 77, 81 (1988) (although police could not verify informant's statement that it was the defendant who sold him drugs, information known to police led to reasonable inference "that drug trafficking was taking place at the defendant's residence, and that the defendant was somehow involved"). The affidavit established a "substantial likelihood of finding the items sought" at the defendant's residence. *Id.* (quotation omitted). We hold, therefore, that the district court had a substantial basis for finding probable cause.

*Affirmed.*

All concurred.