Cheshire
No. 96-826

# THE STATE OF NEW HAMPSHIRE

## v.

## ARNOLD FISH AND HEATHER MATSON

December 30, 1997

*Philip T. McLaughlin*, attorney general (*Brian R. Graf*, assistant attorney general, on the brief and orally), for the State.

*Moir & Brodich, P.A.*, of Concord (*James H. Moir* on the brief and orally), for defendant Arnold Fish.

*Craighead and Martin*, of Manchester (*Rodkey Craighead, Jr.* on the brief and orally), for defendant Heather Matson.

HORTON, J. Defendant Arnold Fish was charged with the felony offense of possession of cocaine with intent to sell, subsequent offense. *See* RSA 318-B:2, :26, II (a) (1995). Defendant Heather Matson was charged with the felony offense of possession of cocaine. *See* RSA 318-B:2, :26, II (a). The State appeals from an order of the Superior Court (*Brennan*, J.) granting the defendants' motions to suppress evidence seized pursuant to a search warrant. We reverse and remand.

On October 30, 1995, Peter S. Thomas, a Keene detective assigned to the New Hampshire Drug Task Force (NHDTF), sought a warrant to search Fish's person; the premises at 3 Suburban Acres, North Swanzey; and any vehicles located on the premises owned or operated by Fish for certain evidence of drug trafficking. In support of this application, Detective Thomas executed a detailed affidavit which contained the following pertinent facts.

A named informant agreed to cooperate with the NHDTF after a large quantity of marijuana was seized during a search of her residence on October 25, 1995. This individual informed the NHDTF that she obtained the marijuana from her sister and agreed to store it at her residence until Fish, who was to receive most of the marijuana, took possession. The informant stated that her sister had

previously delivered similar quantities of marijuana to Fish since at least June 1995. The informant advised the NHDTF that Fish owed approximately $10,000 for these transactions. In addition, the informant stated that Fish purchases the marijuana for $800 per pound and then sells it for up to $2,000 per pound.

On October 26 and 27, 1995, the NHDTF recorded conversations between the named informant and Fish in which Fish attempted to make arrangements to take possession of the marijuana. The NHDTF also monitored conversations between the informant and her sister in which the sister told the informant that Fish had paid his debt and that she should deliver the marijuana to him. The informant told the affiant that although she did not think that Fish keeps large quantities of drugs at his residence, she had observed user quantities of marijuana and cocaine at his home.

Additionally, the affiant learned from Corporal Sue Forey of the New Hampshire State Police that she had interviewed a cooperating individual (C.I.) in October 1994. The C.I. informed Corporal Forey that in July and August 1994, the C.I. and an individual named Robert Leonard made four trips to a particular residence in the Keene area to deliver two to ten pounds of marijuana per trip. The C.I. also indicated that he and Leonard had collected thousands of dollars from the residence on two occasions. The affiant stated that based upon the C.I.'s information, Corporal Forey traveled to Suburban Acres in North Swanzey and identified the residence as a "blue wood framed residence with a detached garage with white doors," matching the search warrant's description of 3 Suburban Acres.

Corporal Forey advised Detective Thomas that an address book containing the name "Arnie" was seized during a search of Leonard's residence. The telephone number was listed to Heather Matson, 99 Suburban Acres, North Swanzey, and the phone tolls seized from the residence showed four to five calls to that number during the months of July and August 1994. The affidavit stated that a criminal record check of Fish revealed that he had been convicted in January 1988 for possession of a controlled drug and possession of a controlled drug with the intent to sell. The affidavit also contained information regarding the affiant's training and experience and the types of evidence that would likely be found in the residence of a drug trafficker. The affiant confirmed through a September 1995 census report that defendants Fish and Matson resided together at 3 Suburban Acres, North Swanzey.

After consideration of the search warrant application, supporting affidavit, and testimony from Detective Thomas, the Magistrate

(*Mangones*, J.) found probable cause to believe that evidence of drug trafficking may be found on the premises of 3 Suburban Acres. The magistrate issued a warrant authorizing the police to search for items of identification, documents or ledgers relating to drug trafficking, the proceeds of drug trafficking, and drug paraphernalia. On October 30, 1995, while executing this search warrant, the police observed a substance that they believed to be cocaine. The police then obtained a second warrant authorizing them to search for controlled drugs. The police seized approximately fifty-four grams of cocaine from the premises, which led to the defendants' indictments.

The defendants moved to suppress the evidence seized on the basis that the first search warrant was invalid because the supporting affidavit failed to establish probable cause to search their residence in violation of part I, article 19 of the New Hampshire Constitution and the fourth amendment to the United States Constitution. The superior court granted the defendants' motions to suppress. Although the court found that the affidavit established probable cause to believe that Fish was involved in drug trafficking, the court concluded that no factual basis existed for connecting Fish's residence to his purported drug business. The court disregarded the information obtained from the C.I., finding it unreliable and untimely.

On appeal, the State contends that based on the totality of the circumstances, the search warrant affidavit provided probable cause to search Fish's residence for evidence of drug trafficking. The State maintains that the affidavit established a clear nexus between Fish's on-going drug activity and his residence.

■ As we have determined that the requirement for probable cause under part I, article 19 is at least equal to that under the fourth and fourteenth amendments, *see State v. Jaroma*, 128 N.H. 423, 431, 514 A.2d 1274, 1279 (1986), we are not required to conduct a separate analysis of the defendants' claims under federal law.

■ Part I, article 19 of the New Hampshire Constitution requires a determination of probable cause before a search warrant may be issued. *See State v. Carroll*, 131 N.H. 179, 184, 552 A.2d 69, 72 (1988). "Probable cause to search exists if a person of ordinary caution would justifiably believe that what is sought will be found through the search and will aid in a particular apprehension or conviction." *State v. Johnson*, 140 N.H. 573, 576, 669 A.2d 222, 225 (1995) (quotation omitted). The police must demonstrate in an application for a search warrant that there is a substantial likeli-

hood that the items sought will be found in the place to be searched. However, "they need not establish with certainty, or even beyond a reasonable doubt, that the search will lead to the desired result." *State v. Marcotte*, 123 N.H. 245, 248, 459 A.2d 278, 280 (1983).

"Reviewing courts should pay great deference to a magistrate's determination of probable cause and should not invalidate a warrant by interpreting the evidence submitted in a hypertechnical sense." *State v. Decoteau*, 137 N.H. 106, 111, 623 A.2d 1338, 1341 (1993) (quotation omitted). Accordingly, we "interpret the evidence submitted in support of a warrant in a commonsense manner, giving due consideration to the preference to be accorded warrants." *Marcotte*, 123 N.H. at 248, 459 A.2d at 280. In this case, we review the sufficiency of the affidavit *de novo* as there were no "controlling facts determined at the superior court level in the first instance." *Johnson*, 140 N.H. at 576, 669 A.2d at 225 (quotation omitted).

We utilize a totality-of-circumstances test to review the sufficiency of an affidavit submitted in application for a search warrant:

> Given all the circumstances set forth in the affidavit before the magistrate, including the veracity and basis of knowledge of persons supplying hearsay information, was there a fair probability that contraband or evidence of a crime would be found in the particular place described in the warrant?

*State v. Silvestri*, 136 N.H. 522, 525, 618 A.2d 821, 823 (1992) (quotation omitted). This approach includes an examination of the "veracity and basis of knowledge of the informant, in addition to other indicia of reliability, such as corroboration by police officers." *Johnson*, 140 N.H. at 576, 669 A.2d at 225 (quotations omitted).

We agree with the superior court that the police established probable cause to believe that Fish was involved in drug trafficking. We disagree, however, with the superior court's determination that the affidavit failed to establish a nexus between Fish's drug activity and his residence. Although the superior court appropriately relied upon the information obtained from the named informant in determining that Fish was involved in drug trafficking, the court erroneously found that the C.I.'s information was unreliable and untimely. The court appears to have failed to consider either the self-incriminating nature of the C.I.'s information or the extent to which the information had been corroborated.

Corporal Forey indicated that although the C.I. had been incarcerated in at least three state prisons for fraud and deceit-related crimes, he provided reliable information in the past which led to the seizure of marijuana and stolen property. The search warrant affidavit also stated that the C.I. provided accurate information which led to another individual's arrest and conviction on a drug trafficking charge. *See id.* (recognizing affiant's averments that informant had assisted police in apprehension of another drug felon in determining reliability of informant); *cf. Silvestri*, 136 N.H. at 525-26, 618 A.2d at 823 (finding affidavit insufficient where it contained no indication of confidential informant's veracity and no other indicia of reliability). The superior court inappropriately discounted the information obtained from the C.I. despite his reliability on at least two occasions in the past.

The affidavit also describes the seizure of an address book and phone tolls from Leonard's residence that independently corroborate the C.I.'s statements. "[O]ther indicia of reliability, such as corroboration by police officers, may be used to supply the missing factors relative to the informant and the informant's information in determining the existence of probable cause." *Carroll*, 131 N.H. at 187, 552 A.2d at 74; *see also State v. Caicedo*, 135 N.H. 122, 125-26, 599 A.2d 895, 897 (1991) (assessing credibility of informant based upon corroboration by police officers). The supporting affidavit states that the address book contained Heather Matson's telephone number with the name "Arnie." The phone tolls showed four or five calls to Matson's number during the months of July and August 1994. Those calls were made during the same time period that the C.I. recounted delivering substantial amounts of marijuana to a residence in Suburban Acres.

Finally, although the superior court appropriately determined that the named informant had provided information against her penal interest, the court failed to consider that the C.I. also had made declarations against his penal interest in providing the information to the affiant. The C.I.'s admission that he delivered marijuana in the Keene area supports his credibility because "[i]t is reasonable to infer the credibility of an informant where he makes an admission against his own penal interest." *State v. Hazen*, 131 N.H. 196, 201, 552 A.2d 77, 80 (1988).

Based upon Corporal Forey's description of the house, the evidence seized from Leonard's residence, and the information in the affidavit that the defendants resided at 3 Suburban Acres, the magistrate could reasonably conclude that the C.I. had delivered marijuana to Fish's residence. The affidavit also contained a

description of the type of evidence that Detective Thomas believed would be found in the possession of drug traffickers based upon his experience in conducting drug investigations. The magistrate was entitled to consider that expertise, in conjunction with the other information contained in the affidavit, in concluding that probable cause existed to search Fish's residence for proceeds of drug trafficking and drug paraphernalia. *See State v. Davis*, 133 N.H. 211, 213-14, 575 A.2d 4, 5-6 (1990).

Moreover, the affidavit demonstrated that Fish's drug activities were both on-going and had occurred over a period of years. For example, the C.I. admitted that he had delivered marijuana to Fish's residence in July and August 1994 and the named informant stated that the defendant had received marijuana deliveries since at least June 1995. The affidavit also indicated that Fish had been convicted in 1988 for possession of a controlled drug and possession of a controlled drug with the intent to sell. The on-going and recent nature of Fish's drug activities is further demonstrated by the magistrate's notes which indicate that while the magistrate was reviewing the affidavit, the affiant received information that a third party was en route to retrieve the marijuana from the informant's residence for Fish.

██ Based on the totality of the circumstances, we conclude that the affidavit in support of the search warrant demonstrated a fair probability that documentary-type evidence, the proceeds of drug trafficking, and drug paraphernalia would be found in Fish's residence.

*Reversed and remanded.*

All concurred.