Strafford
No. 97-480

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL AND CYNTHIA CANNULI

November 9, 1998

*Philip T. McLaughlin*, attorney general (*Mark S. Zuckerman*, senior assistant attorney general, on the brief and orally), for the State.

*Donald E. Bisson*, assistant appellate defender, of Concord, by brief and orally, for the defendants.

BROCK, C.J. The State brings this interlocutory appeal, *see* RSA 606:10, II(a) (1986), from an order of the Superior Court (*Fitzgerald*, J.) granting in part the motion of the defendants, Michael and Cynthia Cannuli, to suppress evidence seized pursuant to a warrant. We reverse and remand.

On November 18, 1996, following a lengthy investigation of the defendants, Chief Investigator Bahan of the New Hampshire Attorney General's office applied for and received from the Concord District Court (*Robbins*, J.) four search warrants. In support of the warrants, Bahan submitted a fifty-page affidavit that detailed the findings of the investigation and described several instances of the defendants' incriminating conduct. The affidavit stated that on December 31, 1995, Michael Cannuli had set fire to the building where the Cannulis' business, CLC Motors (CLC), was located, and later attempted to collect insurance proceeds. Included also was a statement that Cannuli had made to an informant that prior to the fire he had moved some of CLC's business records to his mother-in-law's condominium. Bahan stated in the affidavit that he had reviewed a deposition of Cynthia Cannuli, Michael Cannuli's wife, taken in a civil suit on July 25 and August 20, 1996. A financial application that listed the names and address of Cynthia's parents, Fred and Shirley McLaughlin, was included as an exhibit to that deposition. The affidavit did not indicate the date on which the financial application was made and contained no other references to Cynthia's parents. On the basis of this information, one of the warrants authorized the search of a residence belonging to Fred and Shirley McLaughlin for business records from CLC Motors

(McLaughlin warrant). Among the items seized when the McLaughlin warrant was executed were two video tapes that allegedly depicted Michael engaging in an extortionate transaction, and the aftermath of an incident in which Michael violently attacked a man.

Subsequently, Michael was indicted on several charges, including arson, insurance fraud, first degree assault, and theft by extortion. Cynthia was indicted as an accomplice both to theft by extortion and to arson, and for insurance fraud.

Prior to trial, the defendants moved to suppress all evidence obtained pursuant to the four warrants. The superior court granted their motions with respect to the McLaughlin warrant, finding the warrant to be unsupported by probable cause, and the State moved for partial reconsideration. The court denied the State's motion, reasoning that "[t]he affidavit establishes only that at some unknown time defendant Michael Cannuli moved some business records to his mother-in-law's condominium and that at some unknown time Cynthia Cannuli filed an application with a financial institution listing her mother's name and address."

On appeal, the State contends that the affidavit supporting the McLaughlin warrant and the warrant application demonstrate a "fair probability" that documentary evidence of crimes would be found at the McLaughlin residence. Thus, the State argues that the district court had sufficient information to support a finding of probable cause, and that this finding should have been given deference by the superior court.

We analyze the State's claim first under the New Hampshire Constitution, making "reference to decisions of the United States Supreme Court and other jurisdictions only for the purpose of aiding our State constitutional analysis." *State v. Carroll*, 131 N.H. 179, 184, 552 A.2d 69, 72 (1988). Because Part I, Article 19 provides defendants with at least as much protection as the Federal Constitution, *see State v. Daniel*, 142 N.H. 54, 57, 694 A.2d 989, 991 (1997), we do not engage in a separate federal analysis.

Part I, Article 19 mandates that search warrants issue only upon "cause or foundation . . . supported by oath or affirmation." This language requires an issuing magistrate to find probable cause. *See, e.g., Daniel*, 142 N.H. at 57, 694 A.2d at 991. Probable cause exists if "a person of ordinary caution would justifiably believe that what is sought will be found through the search and will aid in a particular apprehension or conviction." *Id.* (quotation omitted). To make this showing, the affiant need only present the magistrate with

sufficient facts and circumstances to establish a "substantial likelihood" that the evidence or contraband sought will be found in the place to be searched. *State v. Kirsch*, 139 N.H. 647, 650, 662 A.2d 937, 940 (1995).

■ We review an order by the trial court suppressing evidence seized pursuant to a warrant *de novo*, "except as to any controlling facts determined at the superior court level in the first instance." *Daniel*, 142 N.H. at 57, 694 A.2d at 991 (quotation omitted). In our review, we "pay great deference to a magistrate's determination of probable cause and [do] not invalidate a warrant by interpreting the evidence submitted in a hypertechnical sense." *State v. Fish*, 142 N.H. 524, 528, 703 A.2d 1377, 1379 (1997) (quotation omitted). We interpret "[a]ffidavits in support of search warrants . . . in a realistic fashion and with common sense." *State v. Silvestri*, 136 N.H. 522, 525, 618 A.2d 821, 823 (1992) (quotation omitted). Close cases are "largely determined by the preference to be accorded to warrants." *Kirsch*, 139 N.H. at 650, 662 A.2d at 940 (quotation omitted).

The defendants argue that "[w]hile the passage of time will not necessarily render information stale in every instance, any probable cause will be rendered stale if not supplemented by new, current facts." Because the affidavit alleges that Michael Cannuli admitted to moving the records at least eleven months prior to the application for the search warrant, and because the affidavit asserted no additional facts to confirm that the records remained at the McLaughlin residence, the defendants argue that the superior court properly found that probable cause was lacking. We disagree.

Although we have previously acknowledged that "probable cause springing from specific facts diminishes with the passage of time," *State v. Moreau*, 113 N.H. 303, 307, 306 A.2d 764, 767 (1973), we have never held that probable cause must be supplemented in all circumstances with current information. Rather, we have stated that "the passage of time is but one factor in determining the existence of probable cause." *State v. Andrews*, 125 N.H. 158, 165, 480 A.2d 889, 893 (1984). If older information, despite its age, "contributes to an inference that probable cause exists at the time of the application, its age is no taint." *State v. Valenzuela*, 130 N.H. 175, 192, 536 A.2d 1252, 1264 (1987), *cert. denied*, 485 U.S. 1008 (1988). Where the age of the information is at issue, however, we consider other factors, such as the nature of the activity and the items sought, in determining whether the magistrate properly found that probable cause existed. *Kirsch*, 139 N.H. at 650, 662 A.2d at 940.

In this case, Investigator Bahan did not seek items that are likely to be consumed or disposed of quickly. Rather, he sought business records, which by their nature have a tendency to be of enduring value to defendants. *Cf. Andresen v. Maryland,* 427 U.S. 463, 478-79 n.9 (1976) (three-month delay between transactions and the application for a search warrant for business records did not render probable cause stale); *Guerra v. State,* 897 P.2d 447, 454-55 (Wyo. 1995) (records of illegal drug transactions made six to seven months earlier on credit were of "enduring utility" to the creditor while the debts remained unsatisfied). Indeed, counsel for defendants conceded at oral argument that an eleven-month delay would not have rendered probable cause stale if the search had been for business records at the defendants' place of business. Moreover, the State correctly contends that because the affidavit asserts that Michael Cannuli admitted to moving the business records prior to setting the fire, it is reasonable to infer that he intended to safeguard them. This supports an inference that the records, stored purposely in a safe location, would probably remain there eleven months later. *Cf. United States v. Bucuvalas,* 970 F.2d 937, 941 (1st Cir. 1992), *cert. denied,* 507 U.S. 959 (1993) (inference reasonable that documentary evidence and important records would be kept at a secure location).

The superior court's total reliance on the lack of any date as to when Michael Cannuli moved the records or when Cynthia Cannuli filed the financial application as the basis of its decision was misplaced. Because affidavits are to be interpreted "in a realistic fashion and with common sense," *Silvestri,* 136 N.H. at 525, 618 A.2d at 823 (quotation omitted), individual items of information in an affidavit should be read not in isolation, but within the context of the entire affidavit. In this case, the affidavit stated that CLC was destroyed by fire on December 31, 1995, that one or two days prior to the fire, Michael Cannuli had asked the informant to purchase a propane torch for him, and that the informant witnessed Cannuli using the torch to ignite CLC on December 31. Further, the affidavit stated that approximately two days prior to the fire Cannuli had called the fire department to complain of faulty wiring in an attempt to mislead potential investigators as to the cause of the fire. Finally, the affidavit asserted that approximately two days after the fire, Cannuli gave the torch back to the informant and requested that he dispose of it. We find in light of this information that the district court could reasonably have inferred that Michael Cannuli engaged in a scheme to commit arson in late December 1995, and that the removal of the business records occurred concurrently with this scheme.

■ Because the superior court focused on the lack of dates in the affidavit, it ruled that the warrant lacked probable cause. We conclude that this interpretation of the affidavit was hypertechnical. *See Fish*, 142 N.H. at 528, 703 A.2d at 1379. A common sense reading of the affidavit supports the inference that Michael Cannuli moved important business records from CLC shortly before committing arson in an attempt to store them in a secure location. Because business records are of an enduring quality, and because the district court could reasonably have inferred that Cannuli moved the records to safeguard them, we conclude that a "person of ordinary caution" could justifiably believe that they would be present at the McLaughlin residence eleven months later. We therefore reverse the order of the superior court suppressing the evidence obtained pursuant to the McLaughlin warrant, and remand for proceedings consistent with this opinion.

*Reversed and remanded.*

All concurred.