Hillsborough-northern judicial district
No. 97-415

STATE OF NEW HAMPSHIRE

v.

ROBERT R. MCMINN, JR.

July 16, 1999

*Philip T. McLaughlin*, attorney general (*Brian R. Graf*, assistant attorney general, on the brief and orally), for the State.

*Gary Apfel*, assistant appellate defender, of Orford, on the brief and orally, for the defendant.

BROCK, C.J. The defendant, Robert R. McMinn, Jr., was convicted of one count of receiving stolen property, *see* RSA 637:7 (1996), following two searches of a storage unit pursuant to two separate warrants. The defendant appeals, arguing that the Superior Court (*Abramson*, J.) erred in denying his motion to suppress. We affirm.

On November 3, 1994, Corporal Michael H. Hambrook of the New Hampshire State Police applied for a warrant to search a storage unit for controlled drugs, drug paraphernalia, documentation of drug trafficking, and proceeds of drug sales. In support of this application, Hambrook executed an affidavit that stated the following facts.

While conducting an investigation into the drug dealing activities of the defendant, Hambrook received information in February 1994 from a confidential informant (CI#1) that the defendant was committing numerous burglaries with another individual (I#1). On April 7, 1994, and on several occasions thereafter, Hambrook interviewed another confidential informant (CI#2) who had provided information to law enforcement in the past resulting in numerous felony drug arrests and convictions. CI#2 informed Hambrook that the defendant was a professional burglar who favored commercial breaks. CI#2 further informed him that the defendant dealt in large quantities of marijuana. CI#2 named three sources from whom the defendant purchased drugs. One of these sources was I#1. Another source and his wife were murdered on May 19, 1993. Marijuana and drug dealing paraphernalia were

discovered at the victims' residence. The final source was a known drug dealer at whose residence Hambrook had discovered drugs during an earlier search.

Sergeant Jim Noyes and Corporal Brian Hester of the New Hampshire State Police informed Hambrook that they had talked with a confidential informant (CI#3) on July 19, 1994. CI#3 stated that he had known the defendant since 1991 and that the defendant had been dealing in stolen goods and marijuana since that time. CI#3 had seen packages of marijuana at the home of defendant's sister and was told by her that the marijuana was for the defendant.

On April 20, 1994, Hambrook instructed CI#2 to meet with the defendant. Hambrook observed the meeting and was later informed by CI#2 that they had discussed past marijuana deals and the defendant's burglary activities.

On November 2, 1994, Hambrook talked with Corporal Susan Forey of the New Hampshire State Police. Forey and Agent Gerry Graffam of the United States Drug Enforcement Administration (DEA) spoke with yet another confidential informant (CI#4), and based on the information provided, Graffam obtained a DEA administrative subpoena for the tenant records of a storage facility. On November 2, 1994, Forey, Graffam, and Detective Tim Brown of the Manchester Police Department reviewed the tenant records which were provided. Forey informed Hambrook that storage unit #202 was rented to Kenna Ritzinger. While Forey, Graffam, and Brown were in the storage facility office, the defendant entered the storage facility premises and opened and closed storage unit #202. The defendant then entered the storage facility office and told the desk clerk that he was Donald Ritzinger, the husband of Kenna, and was there to pay for his wife's storage unit, which he identified as unit #202. Brown, who knew the defendant, informed Hambrook that the man who identified himself as Donald Ritzinger was in fact the defendant.

Hambrook also spoke with Detective Glenn Kramer of the Manchester Police Department, who on November 2, 1994, performed a walk past storage units #196 through #206 with his narcotics detection dog. The dog made a positive indication for drugs at storage unit #202.

A check of the defendant's criminal records by Hambrook revealed that the defendant had been convicted of, among other things: (1) possession of a narcotic drug; (2) receiving stolen property; and (3) the sale of a narcotic drug. In addition, the defendant had been arrested for burglary on September 7, 1993, and was awaiting trial.

The affidavit also contained the following information based on Hambrook's training and professional experience. Drug dealers commonly keep large quantities of drugs in storage units to safeguard them from police confiscation or being stolen by competitors. Drug dealers use fictitious names to conceal financial transactions and ownership of assets. Drug dealers maintain records of their activities to keep track of contacts, customers, and monies owed to them. Drug trafficking is a continuous activity occurring over months and years. Hambrook believed the defendant to be a large scale marijuana dealer who was renting storage unit #202.

On November 3, 1994, a search warrant was issued and executed for unit #202. The unit contained a blue Chevy Corvette, a floor safe, five three-ring binders containing baseball cards, three suitcases full of baseball memorabilia, a pair of snowpants, and numerous framed pictures of "Looney Tunes" cartoon characters. Hambrook observed that one of the framed cartoon pictures had the words "Phantom of the horse opera" written on it. Detective James Stankiewicz of the Manchester Police Department, also involved in the search, observed that one of the framed cartoon pictures had the name "Fritz Freleng" on it. Stankiewicz informed Hambrook of two separate burglaries occurring in March 1994, in which framed cartoon pictures of Looney Toon, Walt Disney, and Warner Brothers cartoon characters, including works drawn by Fritz Freleng, and baseball cards were stolen. One of the pictures stolen was described as having the words "Phantom of the horse opera" inscribed on it. Believing that a number of the items within the storage unit were stolen, Hambrook left the unit and prepared a second search warrant for stolen property. Based on this information, the second warrant was issued and executed.

The defendant moved to suppress the evidence seized from the storage unit. The superior court denied the defendant's motion, and this appeal followed.

On appeal, the defendant initially argues that the dog sniff was an unlawful search in violation of Part I, Article 19 of the New Hampshire Constitution, see State v. Pellicci, 133 N.H. 523, 580 A.2d 710 (1990), and the Fourth Amendment to the United States Constitution. We conclude that probable cause existed for the first warrant independent of the dog sniff, and thus we do not need to reach the issue of whether the dog sniff was a search.

Additionally, the defendant argues that the first search warrant lacked probable cause because: (1) the affidavit lacked sufficient information for a magistrate to make a determination of the informants' veracity and basis of knowledge; (2) the information in

the affidavit was stale; and (3) the affidavit lacked a nexus between the defendant's alleged criminal activity and the storage unit. Finally, he argues that the second warrant failed to establish probable cause that the items sought were in fact stolen.

We analyze the defendant's claims first under our State Constitution, referring to federal cases only to aid in our analysis. *State v. Ball*, 124 N.H. 226, 231-33, 471 A.2d 347, 350-52 (1983). Because "part I, article 19 of the New Hampshire Constitution provides the defendant with at least as much protection as the Federal Constitution in this area," *State v. Daniel*, 142 N.H. 54, 57, 694 A.2d 989, 991 (1997) (quotation omitted), it is unnecessary to conduct a separate federal analysis, *see id.*

■ "Part I, Article 19 mandates that search warrants issue only upon cause or foundation supported by oath or affirmation. This language requires an issuing magistrate to find probable cause." *State v. Cannuli*, 143 N.H. 149, 151, 722 A.2d 450, 452 (1998) (quotation and ellipsis omitted). "Probable cause is established where a person of ordinary caution would justifiably believe that what is sought will be found through the search and will aid in a particular apprehension or conviction." *Daniel*, 142 N.H. at 57, 694 A.2d at 991 (quotation omitted). The application for a search warrant need only contain sufficient facts and circumstances to establish "a substantial likelihood that the items sought will be found in the place to be searched." *State v. Carroll*, 131 N.H. 179, 184-85, 552 A.2d 69, 72 (1988). "[C]omplete certainty has never been required by this court when determining whether probable cause to search exists." *Daniel*, 142 N.H. at 59, 694 A.2d at 992 (quotation omitted). "An affidavit may establish probable cause without the observance of contraband at the location to be searched." *State v. Silvestri*, 136 N.H. 522, 527, 618 A.2d 821, 824 (1992).

We review the affidavit under a totality-of-the-circumstances test.

> Given all the circumstances set forth in the affidavit before the magistrate, including the veracity and basis of knowledge of persons supplying hearsay information, was there a fair probability that contraband or evidence of a crime would be found in the particular place described in the warrant?

*Daniel*, 142 N.H. at 58, 694 A.2d at 991 (quotation omitted). We do not interpret the evidence submitted for a warrant in a hypertechnical sense. *See State v. Fish*, 142 N.H. 524, 528, 703 A.2d 1377, 1379 (1997). Rather, we interpret the evidence "in a

commonsense manner, giving due consideration to the preference to be accorded to warrants." *Id.* Because there were no controlling facts determined by the superior court, our review of the court's order on the motion to suppress is *de novo. See Daniel*, 142 N.H. at 57, 694 A.2d at 991.

The first search warrant stated that the defendant was a known drug dealer who dealt in large quantities of marijuana. He had been found guilty of possession and the sale of narcotic drugs and receiving stolen property. Three confidential informants revealed that the defendant was a professional burglar. Two of these informants confirmed that the defendant dealt in marijuana. One of the informants, who had given reliable information in the past, *see State v. Johnson*, 140 N.H. 573, 576, 669 A.2d 222, 225 (1995), named three sources from whom the defendant purchased marijuana. This information was also corroborated when searches of two of the sources' residences revealed drugs. *Cf. Fish*, 142 N.H. at 529, 703 A.2d at 1380 (independent corroboration by police may aid in determining an informant's reliability). Furthermore, an informant personally observed marijuana at the home of the defendant's sister. The sister told that informant that the marijuana was for the defendant. Based on information from another confidential informant, a DEA administrative subpoena was issued to search the tenant records of a storage facility. Based on this information, the magistrate could have reasonably inferred that some type of drug activity was occurring at that storage facility. Moreover, three law enforcement officers observed that the defendant paid for and had access to storage unit #202. The officers also observed the defendant use a fictitious name when paying for the unit. These observations occurred the day before the warrant was issued and executed. Finally, Hambrook provided information based on his training and professional experience that drug dealers are known to: (1) keep large quantities of drugs in storage units; (2) use fictitious names; and (3) maintain records of their drug trafficking activities. Furthermore, he provided information based on his training and professional experience that drug dealing is a continuous activity occurring over months and years.

■ ■ We find that the foregoing facts and circumstances, considered in a common sense way, would justify a reasonable and prudent person in believing that it is more probable than not that the items listed in the first search warrant application would be found in storage unit #202. The information provided by the three confidential informants was corroborated by each others' state-

ments and by independent police searches of two of the defendant's drug suppliers' residences. Although the affidavit contained information collected over a period of time, the totality of information was not stale because it included recent information of the defendant's suspicious activity at the storage facility provided the day before the warrant was issued and executed. *Cf. State v. Valenzuela*, 130 N.H. 175, 192-94, 536 A.2d 1252, 1264-65 (1987) (court reviews staleness based on the totality of evidence including reasonable inferences that drug activity has continued).

With respect to the second warrant, the affiant and Detective Stankiewicz personally observed baseball cards, baseball memorabilia, and framed cartoon pictures that possessed distinguishing characteristics within storage unit #202. Stankiewicz had provided Hambrook with information of two recent burglaries where similar items were stolen. Based on these facts, we find that the second warrant application contained sufficient facts to establish probable cause.

Accordingly, we affirm the superior court's denial of the defendant's motion to suppress.

*Affirmed.*

All concurred.